## MIKE MARTINEZ V. STATE

No. 33,537. October 2, 1961
Appellant's Motion for Rehearing Overruled November 29, 1961

MORRISON, Judge, dissented.

*George T. Thomas* and *Roger D. Brown,* Big Spring, for appellant.

*Justin A. Kever,* District Attorney, San Angelo, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Presiding Judge.

The offense is murder; the punishment, life.

The indictment, returned November 7, 1960, alleged that appellant, on or about May 7, 1957, killed Taylor L. Garrett by shooting him with a gun.

Trial was upon a plea of guilty, appellant having filed application for suspended sentence.

The evidence introduced by the state included the following:

The deceased, Taylor Garrett, was employed at a Gulf Service Station in Sterling City. About 9 P.M., the witness Gruny, who operated a service station across the street, saw an automobile which he described as a "'51 Ford" at the Gulf Station and saw the deceased and some boys there. He heard some shots and saw the car pulling out of the driveway at a "terrific speed," going toward San Angelo. He saw the deceased staggering across the driveway hollering "Boots, Boots." He told his son to call the sheriff and he ran to the deceased, arriving just as he fell face down. He was present when the sheriff and deputy sheriff arrived, and when Dr. Swann pronounced Taylor Garret dead, and the body was removed.

San Angelo Police Officer R. G. McKnight testified that a road block was set up in San Angelo; that a "light tan '50 Ford" ran the block and he pursued it until it overturned. He identified appellant as one of four young teenagers who were in the car. He testified that appellant was in the front seat, and he identified a pistol introduced in evidence as that which he noticed laying next to the windshield in the upturned car.

Nicky Rocha testified that he was with appellant when they stopped at the service station and he saw appellant shoot Mr. Garrett. He testified that he was with appellant in Big Spring when they went to St. Thomas Church and took the car and some beer, then picked up two boys, Herman and Doyle; that after drinking some of the beer they started toward San Angelo. It was his testimony that he was driving the car and that he stopped at the service station in Sterling City because Herman and he appellant said they wanted to go to the bathroom.

"Herman and Mike (appellant) got out and they went in the bathroom; then Herman started out and Mike then went into the service station, * * * and when I last looked up Mr. Garrett was struggling with Mike."

Nicky further testified that after the appellant shot Mr. Garrett they "took off * * * and headed for San Angelo;" that he drove at about 90 miles per hour; that appellant "was kind of scared and drunk"; that they drove through a road block and finally turned the car over.

On cross-examination he testified that appellant had the pistol when they were walking from school; that some of the boys shot at some cans and bottles before they left Big Spring; that appellant wanted them to go to Mexico with him; that he did not hear anybody say anything about holding up the filling station; that after the shooting appellant and Herman got in the car, appellant said "Let's go," and Herman said "You killed him," and the appellant said "I didn't mean to."

The state introduced without objection the voluntary statement of the appellant in which he stated that he, Herman and Nicky "decided to rob a gas station in Sterling City. We stopped at a Gulf Station * * * Herman and I got out of the car and went into the rest room to see if the gun was loaded * * *. We both went inside the station, I pulled the gun on the man and told him to open the cash register. He grabbed me by the neck and started pulling me outside and was hollowing 'Boots'. When we got outside I shot him first in the leg one time and I got him five times in the stomach. We jumped in the car and Nicky drove 95 and 100 miles an hour, I told him to step on it harder."

Appellant testified that Herman said they needed some money; that after they used the rest room "Herman and me stepped in front of the door. * * * we were going to try to scare him to give us the money, and when we saw he didn't get scared * * * Herman ran to the car, and I started to run to the car too when he grabbed me. * * * he started struggling around with me, and I was trying to get away from him, and I figured if I shot the gun * * * he would let me loose, and I started firing, but I didn't — I wasn't pointing the gun at him. * * *"

He denied that he intended to shoot or kill the deceased or that he knew he had killed him, but testified that he kept firing until he was out of shells, "I didn't know I hit him until he fell

down" and didn't know how many times the deceased had been shot until the officers told him.

Appellant was nearing his 14th birthday when Mr. Garrett was killed. The indictment was returned after appellant reached the age of 17 years.

Appellant pleaded guilty, but after hearing the evidence, including the testimony of the appellant, the careful trial judge withdrew the plea of guilty and entered the plea of not guilty.

The court, in his charge, gave effect to Art. 31 P.C., the appellant not having arrived at the age of 17 when the offense was committed, and death was not submitted as an applicable punishment.

Prior to answering ready for trial, appellant filed a plea of former conviction as a bar to prosecution under the murder indictment, alleging that he had been adjudged a juvenile delinquent in the county court and committed to the "State Youth Development School for Boys at Gatesville, Texas." Attached to said motion is the petition alleging Mike Martinez to be a male child 13 years of age and alleging facts which appeared to bring him within the provisions of the Delinquent Child Act that on or about May 7, 1957, he made an assault upon T. L. Garrett and "by said assault, and by violence upon the said T. L. Garrett, and by putting the said T. L. Garrett in fear of life and bodily injury, attempt to fraudulently take from the person and possession of the said T. L. Garrett the personal property of the said T. L. Garrett with the intent then and there to appropriate said property to the use and benefit of him, the said Mike Martinez * * *."

Also attached to said plea is an order finding Mike Martinez guilty of the acts alleged in the petition; adjudging him a delinquent child and committing him to the custody of the Texas State Youth Development Council for an indefenite time, not extending beyond the time he should reach the age of 21 years, and ordering his delivery to the custody of the State Youth Council by delivering him to Gatesville State School for Boys, Gatesville, Texas.

No evidence appears to have been offered in support of the plea and no issue was submitted to the jury or requested in regard thereto.

The only evidence found in the statement of facts which may be said to relate to the Juvenile proceeding appears in the testimony of the appellant wherein he was asked and answered: "Q. You were tried here in court and sent down to the State School for Boys, weren't you? A. Yes, Sir.

"Q. How long did you stay down there? A. A year and a month.

"Q. Outside of that, have you ever been convicted of any other offense? A. No, Sir."

The sole ground for reversal is the contention that this prosecution for murder was barred by reason of the Juvenile Court proceeding in which Mike Martinez was adjudged a delinquent because of an assault upon T. L. Garrett with intent to rob him; was committed, in accordance with Sec. 12 of Art. 5143(c) V.C.S., to the State Youth Development Council, and appellant testified that he was in the State School for Boys for a year and a month. (Art. 5143(d) V.C.S., which, among other provisions, changed the name of the Council, went into effect May 23, 1957, a week after the commitment of Mike Martinez by the County Court of Sterling County.)

To agree with appellant's contention that this prosecution was barred we would first have to agree that the plea required no supporting proof: that the appellant Mike Martinez was the same person as the Mike Martinez who was committed as a juvenile delinquent; that T. L. Garrett, who was alleged to have been assaulted with intent to rob, and Taylor L. Garrett, who was murdered, were one and the same; and that the assault in the service station by presenting a pistol, with intent to scare and thus obtain money from the cash register, and the shooting of the victim, first in the leg and then five times in the stomach after the parties got outside, were not separate acts.

Should we agree that under the facts a conviction under an indictment for assault with intent to rob would bar a subsequent conviction under an indictment for murder, without regard to whether the evidence introduced was the same and whether or not evidence was introduced in the trial for assault to rob showing that the victim was shot and killed, we would then reach the question of whether such a commitment of an accused as a juvenile delinquent is a bar to his prosecution after he reaches

the age of 17, either as double jeopardy or under the due process clause of the Constitution of the United States.

We do not agree that the assault made in the service station by presenting a pistol, coupled with the demand that the cash register be opened, was the same illegal action as the shooting of the victim in the driveway thereafter, first in the leg and then five times in the stomach.

The rule in Doggett v. State, 130 Tex. Cr. R. 208, 93 S.W. 2d 399, applies only where the state relies upon the same evidence, the same facts and the same transaction in the second conviction as that previously used. In that case the victim was shot and killed when he failed to comply with the order to put up his hands, and money was taken from his pockets. It was stipulated that the murder indictment grew out of no other shooting of the deceased. This court said: "In the present instance, the proof is conclusive that, in the appellant's conviction for murder, he was convicted of the same transaction and *upon the same evidence* as that upon which he was previously convicted of the offense of robbery with firearms." (Doggett v. State, supra, 93 S.W. 2d at page 405.)

There is no showing in the record before us that evidence was introduced in the Juvenile Court showing that appellant shot or killed the person he had attempted to rob, and no such proof was necessary. The assault with intent to rob was complete when appellant presented a pistol with intent to scare the service station operator and cause him to comply with the demand that he open the cash register. The subsequent shooting and killing, on the driveway, was a separate assault which did not necessarily require proof of a previous assault with intent to rob.

Taylor v. State, 41 Tex. Cr. R. 564, 55 S.W. 961, is deemed applicable. See also 81 A.L.R. 699, 701.

Under the record, we hold that the commitment of the accused as a juvenile delinquent was not available as a defense to the murder indictment returned after he reached the age of 17 years, and that no denial of due process of law or violation of the principles of fundamental fairness is shown. Dearing v. State, 151 Tex. Cr. R. 6, 204 S.W. 2d 983; Perry v. State, No. 33,480, 350 S.W. 2d 21, and Hultin v. State, No. 33,515, 351 S.W. 2d 248, this day decided, sustain our holding.

The judgment is affirmed.

MORRISON, Judge (dissenting).

Under the opinion of the Supreme Court of this State in Dendy v. Wilson, 179 S.W. 2d 269, it is the settled law that the passage of the present Juvenile Delinquency Act in nowise deprives a minor of all the constitutional rights held by an adult. This being true, it naturally follows that this accused is entitled to have the courts protect his constitutional right not to be tried twice for the same offense. He was tried once for assault with intent to rob, which he committed at the age of thirteen, and served that term of confinement. It is established law in this state that under our Constitution robbery and the murder arising out of such robbery are the same offense. Opinion on rehearing in Doggett v. State, 130 Tex. Cr. Rep. 208, 93 S.W. 2d 399, and cases there cited. He should not now be tried again because of the protection afforded him by the Constitutions of this State and of the United States. U. S. v. Dickerson, 271 F. 2d 437, and In re Poff, 135 F. Supp. 224, support the views I here express.

To uphold this conviction would authorize the confinement of a juvenile for the maximum term prescribed by law for the offense committed and then a retrial after he attains the age of seventeen, and a subsequent reconfinement for another maximum term. Such a situation would surely be a deprivation of due process because it would be discriminating against the minor because of his age.

I respectfully dissent to the affirmance of this conviction.